<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MELINDA JACKSON-HILL, <br><br>                 *Appellant,* <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                 *Appellee.* | Civ. No.  08-3457 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

JAMES D. MUIRHEAD, Esq.
74 Central Avenue
Hackensack, NJ 07601

    *Attorney for Appellant*

RALPH J. MARRA
Acting UNITED STATES ATTORNEY for the District of New Jersey
by: Maria Fragassi Santangelo
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278

    *Attorney for Appellee*

**<u>DEBEVOISE, Senior District Judge</u>**

      Appellant Melinda Jackson-Hill seeks review pursuant to section 205(g) of the Social

Security Act, 42 U.S.C. § 301, <u>et. seq.</u> ("the Act"), of the Commissioner of Social Security's

("Commissioner") final determination that she is not disabled, and therefore not entitled to

Disability Insurance Benefits. Plaintiff argues that the Administrative Law Judge ("ALJ") presiding over the adjudication below failed to properly consider the effect of her obesity, visual maladies, physical pain, and depression – both as separate conditions and in combination with one another – on her ability to work. Because the court finds that the ruling below was supported by substantial evidence, the Commissioner's determination will be affirmed.

## I.  BACKGROUND

Plaintiff was an employee of the United States Post Office in Jersey City, New Jersey, from 1985 until 2003. During the last twelve years of her tenure at the Post Office, she worked as a clerk in the Motor Vehicles Division. Her responsibilities included using a computer to enter routing and package information into databases, answering phones, and directing drivers.

Plaintiff suffered two injuries during her time as a postal employee. In 1996, she underwent surgery to address carpal tunnel syndrome, a condition in which a nerve running from the forearm to the hand becomes compressed as the result of repetitive hand motions such as typing. The government reimbursed Plaintiff for the cost of that surgery and other treatment relating to carpal tunnel through the Federal Employee Retirement System ("FERS"). (R. at 396.) During the proceedings below, however, Plaintiff's husband testified that the injuries to her hands resulted in an ongoing loss of dexterity, stating that she often drops things and finds it difficult to grip objects. (R. at 407.) Four years after she underwent surgery to address carpal tunnel syndrome, Plaintiff fell while on the job, rupturing her left quadriceps. She was awarded some compensation for the damage to her leg pursuant to the FERS, but continues to have limited mobility as a result of the injury. (R. at 395, 447.)

In addition to the injuries she sustained while working for the Post Office, Plaintiff suffers from a number of debilitating conditions. She is obese; despite her relatively short stature

of five feet, five inches, her weight has fluctuated between 265 and 210 pounds since she left her job. (R. at 447.) That obesity is caused partially by the fact that Plaintiff suffers from hypothyroidism, (R. at 394), a condition in which the thyroid gland does not produce sufficient amounts of the hormones that usually regulate the body's metabolism, resulting in weight gain. Additionally, Plaintiff testified that she has high blood pressure and experiences frequent periods of lightheadedness, (R. at 394-95), two conditions that are often associated with hypothyroidism and obesity.

Plaintiff also suffers from respiratory maladies that impair her ability to work. She has sleep apnea, a condition in which soft tissues in the neck collapse during sleep, blocking the main airway in the throat and forcing the brain to intermittently arouse the sleeper from his or her repose in order to restore breathing. Plaintiff testified that she awakes 30 to 40 times most nights due to the condition, resulting in a lack of restful sleep and constant exhaustion during her waking hours. (R. at 390-91.) Her breathing problems are further compounded by the fact that she suffers from bronchial asthma. Her labored breathing, even when aided by an inhaler during the day and a nebulizer at night, requires constant effort which further depletes Plaintiff's energy. See (R. at 389.) Plaintiff's respiratory maladies, along with her other conditions, severely limit her mobility; her husband testified that she was unable to walk more than a few yards at a time. (R. at 406.)

Plaintiff's vision is also impaired. She has been diagnosed with uveitis, an inflammation of the eye, and glaucoma, a condition in which damage to the optic nerve causes it to detach from the retina, eventually causing blindness. Plaintiff in 1999 underwent surgery on her left eye to address the latter condition, but still has blurred vision and little to no ability to see objects beyond her direct line of sight. (R. at 386-88.) Despite taking medication six times per day to

address her vision problems, Plaintiff was unable to focus on her computer screen while at work, and testified that "the screen would skip or jump and I somehow would choose the wrong thing" while typing.  (R. at 389.)

Plaintiff's deteriorating physical health has had a profound effect on her mental well-being.  As she became more and more infirm, she began to have panic attacks.  (R. at 385.) Despite the fact that she sought treatment and was prescribed drugs to combat her depression, however, the attacks grew more frequent and severe the longer Plaintiff remained at work.  (R. at 385.)  Plaintiff's husband testified that by the time she left her job she was often non-responsive when spoken to and would sometimes lose concentration or unexpectedly switch topics in the middle of a conversation.  (R. at 406-07.)

In 2003, Plaintiff left her job at the Post Office and went on long term disability leave. Unable to return to work, she applied to the FERS for disability retirement benefits, which were approved by that office in October 2004.  Plaintiff also applied to the Commissioner for Disability Insurance Benefits for a period beginning June 25, 2003.  Following the Commissioner's denial of her initial application and request for reconsideration, she requested a hearing before an ALJ.  (R. at 18.)

Plaintiff's initial ALJ hearing was held on March 16 and August 12, 2005.  After considering medical evidence submitted by both Plaintiff and the Commissioner, and hearing the testimony of Plaintiff and her husband, the ALJ on November 1, 2005 issued a decision denying Plaintiff's application.  Despite finding that Plaintiff had "severe impairments secondary to visual problems, asthma, back and neck pain and depression" which limited her to "work that does not require binocular vision and avoids exposure to pulmonary irritants," the ALJ ruled that

she retained the ability to perform "light work" and was therefore not eligible for Disability Insurance Benefits. (R. at 40-41.)

After receiving the unfavorable ruling, Plaintiff petitioned the Appeals Council of the Social Security Administration ("Appeals Council") to reverse the ALJ's judgment, arguing that he failed to properly consider the effect of her obesity on her ability to work. In a decision dated October 31, 2006, the Appeals Council ruled in Plaintiff's favor, reversed the Commissioner's initial determination, and remanded the case so that the ALJ could consider Plaintiff's obesity in determining whether she was entitled to Disability Insurance Benefits. In doing so, the Appeal Council cited two errors in the decision below. First, it noted that the initial ALJ ruling did not "fully evaluate the claimant's obesity." (R. at 84.) Additionally, the Appeals Council pointed out that, although the ALJ had ruled that Plaintiff was capable of "light work," the potential alternative jobs that the ALJ ruled that Plaintiff could perform were "sedentary." Since Plaintiff was over 50 years old at the time she applied for Disability Insurance Benefits, an automatic judgment of disability should have been entered if the ALJ found that she was limited to sedentary work, could no longer perform her current job, and did not have transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(g). Therefore, the Appeals Council instructed the ALJ to "identify examples of appropriate jobs and state the incidence of such jobs in the national economy" pursuant to 20 C.F.R. § 404.1566 in the event that Plaintiff's claim was denied on remand. (R. at 85.)

On remand, the ALJ again found that Plaintiff suffered from "severe impairments" in the form of "lower back and neck pain, mild bilateral carpal tunnel syndrome, asthma, and depression." (R. at 20.) Despite that finding, however, the ALJ held that Plaintiff was not entitled to Disability Insurance Benefits because she did not "have an impairment or combination

of impairments that me[t] or medically equal[ed] one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" and retained "the residual functional capacity to perform simple, unskilled light work" that was available in the national economy as long as that work required "no continuous or repetitive fine fingering for more than 1/3 of the day, exposure to pulmonary irritants and temperature extremes, … [or] keen peripheral vision." (R. at 21-22.) In coming to that conclusion, the ALJ noted Plaintiff's unrebutted testimony:

> She stopped working due to pain in the leg; carpal tunnel syndrome; breathing problems, [and pain in her] neck and knees. She also had sciatic pain [g]oing down her legs [which] worsened when sitting for a long time. Her hands were worse when she was working. She had problems lifting pots and things when cooking and drops things all the time. Her vision also gets blurry. She also complained of panic attacks and sleep apnea.

(R. at 23.)

Despite those findings, however, the ALJ accepted testimony of a vocational expert that Plaintiff was "capable of making a vocational adjustment" to "light work," including employment as a scale operator, clothing folder, or package sorter. (R. at 24.) That conclusion was based partially on the ALJ's ruling that Plaintiff's testimony regarding the "intensity, persistence and limiting effects" of her conditions was "not entirely credible," which, in turn, was based on several medical and psychological examinations. (R. at 24.) The ALJ also disregarded the reports of two medical practitioners hired by Plaintiff on the basis that those physicians were "hired at the request of claimant's attorney, for the sole purpose of obtaining disability benefits for claimant, … [were] well-known to the [ALJ,] and ha[d] submitted remarkably similar reports in other cases," and submitted "opinions that are contradictory rather than complimentary to each other and are not supportable by the objective evidence in the record." (R. at 31.)

6

After the second ALJ decision denying her claim, Plaintiff once again sought relief from the Appeals Council. On May 20, 2008, however, the Appeals Council denied Plaintiff's request for review. (R. at 8.) Thus, the second ALJ decision became the final determination of the Commissioner. 20 C.F.R. § 410.666.

## II. DISCUSSION

Pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Plaintiff asks this court to reverse the Commissioner's determination that she is not disabled and therefore not entitled to Disability Insurance Benefits. In support of her petition, Plaintiff contends that the ALJ's decision was not supported by substantial evidence. Specifically, she claims that the ALJ (1) did not properly consider the effects of her obesity, glaucoma and uveitis, (2) mischaracterized her testimony regarding the severity of her conditions, (3) did not take into account her complaints of pain and depression, and (4) failed to properly consider the combined effect of her various maladies on her ability to work. In opposition, the Commissioner argues that the ALJ (1) properly considered Plaintiff's obesity and visual impairments, (2) acted within his power to determine the credibility of Plaintiff's characterizations of the severity of her conditions, (3) took into account Plaintiff's complaints of pain and depression, and (4) correctly determined that Plaintiff was capable of performing "light work" that was available in the national economy. On the basis of those claims, the Commissioner requests that this court affirm his judgment denying Plaintiff Disability Insurance Benefits.

### A. Standard of Review

On appeal of a decision by the Commissioner of Social Security, a district court exercises plenary review of all legal issues in the case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). A district court's review of the Commissioner's factual findings, however, is deferential and

7

limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) ("A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district court] would have decided the factual inquiry differently."). However, a district court need not blindly follow factual determinations that lack support in the record or are against the clear weight of the evidence adduced below. Substantial evidence consists of "more than a mere scintilla" of support for a determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, the Commissioner's ruling will be affirmed only if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

**B. Determination of Disability**

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity.*  The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(*i*).  Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit.  20 C.F.R. § 404.1572.  If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(i).

*Step 2: Severity of Impairment.*  If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is considered "severe" if it significantly limits the individual's physical or mental ability to do basic work activities.  § 404.1520(c).  If the ALJ finds that an individual's impairment is not severe or does not meet the 12 month durational requirement, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(ii).

*Step 3: Listed Impairments.*  If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 404.1520(a)(4)(iii).  The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity.  If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

*Step 4: Past Relevant Work.*  If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his or her "past relevant work," meaning the individual's prior job or a similar occupation.  20 C.F.R. § 404.1520(a)(4)(iv).  Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his or her impairment.

Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ finds that the individual has the capacity to perform past relevant work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(iv).

*Step 5: Adjustment to Other Work.* If the claimant cannot perform past relevant work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(*v*). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step. At the fifth step, the Commissioner must prove that the individual is capable of performing gainful employment other than his past relevant work and that such jobs exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

**C. The Commissioner's Findings and Conclusions**

The Commissioner's determination that Plaintiff was not disabled was supported by substantial evidence and will be affirmed. Plaintiff argues that the ALJ (1) did not properly consider the effects of her obesity, glaucoma and uveitis, (2) mischaracterized her testimony regarding the severity of her conditions, (3) did not take into account her complaints of pain and

10

depression, and (4) failed to properly consider the combined effect of her various maladies on her ability to work.  Upon review of the ALJ's opinion, however, those arguments are unavailing.

The ALJ considered each of Plaintiff's conditions – both individually and in combination with one another.  With respect to obesity, the ALJ noted that the record did not include any diagnosis of organ damage or heart disease due to the combination of her obesity and other conditions, and stated that:

> [T]he claimant was not diagnosed with morbid obesity. Furthermore, the claimant did not have any functional limitations due to her obesity.  Therefore, I find that the combination of hypertension and the claimant's obesity has not resulted in end organ damage and the combination of the claimant's asthma, low back and neck pain and obesity has not resulted in listing level limitations.  Therefore, I find that the combination of obesity and the claimant's other impairments does not meet or equal the criteria of any of the listed impairments.

(R. at 22.)
When finding that Plaintiff's visual conditions did not render her disabled, the ALJ noted that her "[t]est of visual acuity showed that her vision in the right eye was 20/50; vision in the left eye was 20/70, and was 20/50 for both eyes … [S]he was in no acute distress." (R. at 25.)  The ALJ also acknowledged the facts that Plaintiff had "reported that she spends her days reading and watching television" and that Dr. David Chu, an opthamologist, had diagnosed her vision quality as "good."  (R. at 27, 29.)   Given the medical evidence regarding the effects of Plaintiff's obesity and visual conditions on her ability to work, the court finds that the ALJ's determination that those conditions – both individually and in concert with her other maladies – did not render her disabled was supported by relevant evidence of the type a reasonable mind might accept, and therefore must be affirmed.

11

Plaintiff's argument that the ALJ mischaracterized her testimony regarding the severity of her conditions must also be rejected. The ALJ stated that Plaintiff "testified that she only uses over-the-counter medication. She is fully independent in self care. She stated that she cooks, shops, takes walks, watches, television, visits friends, attends church, and performs household chores. Such activities are incompatible with total debilitation." (R. at 30.) Although the ALJ's statement to that effect may be read as portraying Plaintiff's conditions as less severe than her own testimony, it is not inconsistent with that testimony or the medical evidence in the record. Plaintiff testified that, although she "stay[s] inside most of the time," (R. at 212), she is able to drive on some occasions (R. at 214) and visits stores to shop once or twice per month. (R. at 215.) She also stated that her family visits her at home, and that she sometimes – but rarely – visits them at their residences. (R. at 216.) In finding that Plaintiff's conditions were not as severe as she portrayed them, the ALJ cited medical examinations which found that she had "full motor strength of both the upper and lower extremities bilaterally and … a normal gait and station, without the need of an assistive device." (R. at 30.) Furthermore, the ALJ noted the "complete absence of any subsequent medical records showing complaints of or treatments for" symptoms related to some of her claimed conditions. (R. at 30.) In light of the lack of medical evidence supporting Plaintiff's testimony and the contradictory physician reports in the record, the court is unable to conclude that the ALJ so severely mischaracterized Plaintiff's testimony as to render his ruling unsupported by substantial evidence. Therefore, the court must affirm the Commissioner's determination. See Hartranft, 181 F.3d at 360 (3d Cir. 1999) ("A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district court] would have decided the factual inquiry differently.").

Plaintiff's argument that the ALJ did not take into account her complaints of pain and depression is similarly meritless. In his opinion, the ALJ engaged in an extended discussion of Plaintiff's complaints of pain. In doing so, he noted that:

> Dr. Martin A. Fechner … testified that the medical evidence showed that the claimant had some tenderness in the lumbar spine and shoulder areas but her joints were normal.… Dr. Fechner did not think the claimant's impairments either singly or in combination were severe enough to meet or equal any of the listed impairments. Dr. Fechner further opined that she retained the residual functional capacity to perform light work with limits on fine motor control.

(R. at 24.)

Elsewhere in his opinion, the ALJ acknowledged that:

> Dr. David Houston reported that the claimant complained of having a 12-year history of pain in the posterior neck that waxes and wanes. She stated that currently the pain was constant in the right side of the neck and had a burning, cutting qualify with intermittent radiation to the elbow. The claimant advised that for the past year she has had severe cutting type pain in the right shoulder when attempting to lift the shoulder."

(R. at 25.)

However, Dr. Houston's examination revealed no medical evidence corroborating Plaintiff's complaints of pain. (R. at 25.) Based on the lack of medical corroboration – despite the numerous examinations in the record – the ALJ found that "the claimant's medically determinable impairments could be reasonably expected to produce the alleged symptoms, but the claimants statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible." (R. at 24); see also (R. at 29) ("I conclude that [Plaintiff's] complaints of disabling symptoms cannot reasonably be accepted. The record evidence as a whole, considering all medical and non-medical elements, does not support the extent of the claimant's subjective complaints.") That finding complied with federal regulations and, given

13

the medical reports in the record, was supported by substantial evidence. See 20 C.F.R. § 404.1529(c)(3) (stating that subjective complaints of pain "which can reasonably be accepted as consistent with the objective medical evidence" will be taken into account). Therefore, the Commissioner's determination must be affirmed.

Finally, Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1523 by failing to consider the combined effect of her various infirmities on her ability to work. The court's inspection of the ALJ decision reveals that argument to be without merit. As stated above, the ALJ specifically found that "the combination of obesity and the claimant's other impairments does not meet or equal the criteria of any of the listed impairments." (R. at 22.) Elsewhere in his opinion, the ALJ relied on the fact that "Dr. Fechner did not think that the claimant's impairments either singly or in combination were severe enough to meet or equal any of the listed impairments." (R. at 24.) In light of those statements, it is clear that the ALJ considered the cumulative effect of Plaintiff's maladies as required by 20 C.F.R. § 404.1523. Therefore, the Commissioner's determination will be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Commissioner of Social Security's determination that Plaintiff was not disabled within the meaning of 42 U.S.C. § 423(d) is affirmed. The court will enter an order implementing this opinion.

                                               s/ Dickinson R. Debevoise_____
                                               DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 24, 2009